United States District Court
Southern District of Texas
**ENTERED**
April 19, 2016
David J. Bradley, Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| Plaintiff/Respondent, | § | |
| | § | CR. No. 2:13-0388-3 |
| v. | § | (C.A. No. 2:14-100) |
| | § | |
| CASEY DESHAWN TAFT, | § | |
| Defendant/Movant. | § | |

## MEMORANDUM OPINION AND ORDER

Casey Deshawn Taft (Taft) filed a motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255. D.E. 89.[1] The government responded and moved for summary judgment. D.E. 101. Defense counsel's affidavit is also before the Court along with Taft's motion for summary judgment, objections to the government's response, Taft's motions for a joint status report, his further reply, and the government's further response. D.E. 97, 102, 103, 107, 108, 112, 116. Taft filed additional motions and pleadings. *See* D.E. 120, 121, 122, 123, 124, 125. For the reasons stated herein, Taft's motion to vacate, set-aside or correct sentence is denied. He is also denied a certificate of appealability.

### I. JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

### II. FACTS AND PROCEEDINGS

Taft was arrested in May 2013 after an immigration check at the Sarita, Kenedy County, Border Patrol Checkpoint. During the immigration check, a dog alerted to Taft's

---

[1] Docket entry references are to the criminal case.

trailer. Taft had pulled away from the checkpoint before the Border Patrol Agent was informed that the dog alerted. The Agent requested that Taft return for inspection of his trailer; Taft agreed. Upon opening the unlocked trailer door, the Agent found fifteen aliens hidden behind a stack of pallets. D.E. 1. Taft denied knowledge of their presence. *Id*.

Taft first appeared before a federal Magistrate Judge the day after he was arrested and was appointed counsel. D.E. 3. Taft was allowed bond. D.E. 14.

After Taft's arrest, a multi-count First Superseding Indictment was later issued charging Taft and two others, Nathaniel Charles and Melanie Chamberlain, with conspiracy to transport unlawful aliens within the United States using a motor vehicle, and aiding and abetting each other to transport an alien on April 13, 2013, and charging only Taft in three additional counts with transporting unlawful aliens on May 17, 2013, using a motor vehicle. D.E. 28.

Taft and his co-defendants were arraigned on the First Superseding Indictment on June 21, 2013. At that time, a scheduling order was entered setting the final pretrial conference for June 24, 2013, and trial for June 25, 2013. D.E. 37. Charles announced ready for trial. Chamberlain announced that she would plead guilty. The Court granted Taft's requested continuance during arraignment. *See* Minute Entry June 21, 2013.

A Second Superseding Indictment was issued On July 10, 2013, which added three additional counts against Taft for transporting unlawful aliens within the United States by means of a motor vehicle on or about February 12, 2013. D.E. 38. The final pretrial conference was moved to August 5, 2013, and trial scheduled for August 6, 2013. D.E. 41.

2

Taft and the others were arraigned on the Second Superseding Indictment on July 17, 2013.

Chamberlain, Charles and Taft pleaded guilty on August 5, 2013, to Count One of the Second Superseding Indictment, conspiracy, pursuant to a plea agreement. D.E. 46, 47, 48. In all three plea agreements, the government agreed to recommend a sentence within the applicable guideline range, as well as the dismissal of any remaining counts in exchange for the defendant's guilty plea to Count One of the Second Superseding Indictment and truthful testimony. D.E. 46, 47, 48. All of the plea agreements also included a waiver of the right to appeal and a waiver of the right to collaterally attack the judgment pursuant to 28 U.S.C. § 2255.[2] In Chamberlain's and Charles' plea agreements, the government agreed to recommend maximum credit for acceptance of responsibility. Taft's agreement did not include that language because the timing of his decision to plead guilty did not spare the government the need to prepare for trial. The Court ordered preparation of a Presentence Investigation Report (PSR) for each defendant. D.E. 49.

---

[2]  Paragraph 7 states,

Defendant waives his/her right to appeal both the conviction and the sentence imposed. The Defendant is aware that 18 U.S.C. § 3742 affords a defendant the right to appeal the sentence imposed. The defendant waives the right to appeal the sentence imposed or the manner in which it was determined. The defendant may appeal *only* (a) a sentence imposed above the statutory maximum; or (b) an upward departure from the Sentencing Guidelines which had not been requested by the United States, as set forth in 18 U.S.C. § 3742(b).  Additionally, the defendant is aware that  28 U.S.C. § 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the conviction or sentence has become final.  The defendant waives the right to contest his/her conviction or sentence by means of any post-conviction proceeding.

D.E. 47, ¶ 7(emphasis in original).

Taft's PSR calculated his base offense level at 22 based upon the transportation of at least 52 aliens, the creation of a substantial risk of death or injury to the smuggled aliens by transporting them in a trailer, and transportation of an unaccompanied minor. D.E. 56, ¶ 33. The Probation Officer considered Taft to be an organizer/leader which further increased his offense level by four for a total offense level of 26. *Id.*, ¶¶ 36-40.

Taft had prior criminal history that included: unlawful carrying of a weapon, robbery, and possession of cocaine, for a total of 5 criminal history points that resulted in criminal history category III. *Id.*, ¶¶ 45-49. Taft's guideline sentencing range was 78 to 97 months with a statutory maximum sentence of ten years. *Id.*, ¶¶ 64-65.

Taft objected to the PSR on the grounds that he was responsible for only nine aliens. He denied reckless endangerment, denied knowledge that any unaccompanied minors were transported, and denied being a leader/organizer. D.E. 51. In addition, Taft objected to other paragraphs of the PSR that were unrelated to the specific offense conduct. *Id*. The government responded to Taft's objections. D.E. 62.

Sentencing of all three defendants was held on September 25, 2013. Taft's sentencing was contested. The case agent testified at length and Taft also testified. D.E. 99. At sentencing, the Court held Taft accountable for transporting 28 aliens. The Court also found Taft to be a manager/supervisor, that the lives of aliens were endangered by their transportation in the trailer, and that Taft was responsible for transportation of an unaccompanied minor. D.E. 74, D.E. 99, pp. 92-95. The Court also granted Taft a two level reduction for acceptance of responsibility. *Id.*, p. 95. As a result, Taft's total offense level

was reduced to 23, which reduced his guideline sentencing range to 57-71 months. D.E. 74. Taft was sentenced to 64 months imprisonment. *Id.*, p. 100.

After sentencing on September 26, 2013, the government moved to dismiss the remaining counts against Taft and the others. D.E. 63, 64, 65. Judgment was entered on the docket as to Taft on September 30, 2013. D.E. 73. The Court granted the government's motions to dismiss the remaining counts on October 1, 2013. D.E. 78-80.

Taft did not appeal. He filed a motion to vacate, set aside or correct judgment pursuant to 28 U.S.C. § 2255 that the Clerk received on March 27, 2014, and a motion to appoint counsel. D.E. 90. The Court ordered the government to respond and denied Taft's motion for appointed counsel on March 31, 2014. D.E. 91. The government filed a motion to compel defense counsel to file an affidavit that the Court granted. D.E. 94, 95. Counsel filed the affidavit. D.E. 97.

### III.  MOVANT'S ALLEGATIONS

In his § 2255 motion and his motion for summary judgment (D.E. 89, 102, 103) Taft raises numerous claims:  1) the Court had no jurisdiction, 2) counsel failed to challenge the conspiracy allegations for the April 13, 2013, transportation of aliens, 3) Taft did not receive *Miranda* warnings on May 18, 2013, or May 19, 2013, 4) fraud on the Court occurred due to the failure of government agents to investigate the charged conspiracy, and 5) counsel failed to file nineteen specified pretrial motions. One of Taft's claims is unclear, "Because the government has again overlooked the Claims of Ineffective Assistance of Counsel and Counsel's Defectiveness does the State of Texas has Immigration and Deportation Border

Laws? when one of its citizens is check and questioned by U.S. Border Agents? This answer is [Yes]."

Taft's original motion also claims that 1) counsel should have advised him to plead no contest, 2) counsel failed to file objections to the Pretrial and Ellis Order (that counsel withheld from Taft), 3) his Due Process rights were violated,[3] 4) the first Indictment did not include him, 5) the Court used uncorroborated information from Taft's co-defendants at sentencing, and 6) defense counsel failed to fully investigate the PSR.

Taft's motion for summary judgment dated February 24, 2015, identifies additional claims: 1) counsel did not review the PSR with Taft before sentencing and the ten-minute recess during which they discussed the PSR was insufficient time for Taft to understand the implications of the PSR, 2) Taft did not admit to the number of aliens he is alleged to have transported, 3) Taft did not admit leadership status, 4) Taft did not understand the waivers of his right to appeal or for post-conviction relief, 5) Taft did not understand the punishment he faced, 6) counsel refused to provide a direct appeal, 7) counsel failed to discuss the governments discovery with him, and 8) the docket sheet is missing documents which makes it difficult for Taft to represent himself in these proceedings. D.E. 112.

---

[3]   "How could I appeal anything when I am a CITIZEN WHO is protected by the STATE OF TEXAS CONSTITUTION "BILL OF RIGHTS" what has happen is Border Patrol Agents, the PSI and the Plea Agreement ALL violated my Due Process 6th Amend."

## IV.  DISCUSSION

### A.     28 U.S.C. § 2255

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside or correct his sentence: 1) constitutional issues, 2) challenges to the district court's jurisdiction to impose the sentence, 3) challenges to the length of a sentence in excess of the statutory maximum, and 4) claims that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992).

### B.     Jurisdiction

Taft's motion appears to challenge the jurisdiction of the federal courts and also appears to assert that as a citizen of Texas, the federal courts do not have power over him. The district courts of the United States have jurisdiction over persons charged with violation of federal law, even if the same conduct also violates state law. *See* 18 U.S.C. § 3231;[4] *see also United States v. Perea*, 413 F.2d 65, 67 (10th Cir. 1969) ("18 U.S.C. § 3231 lodges original jurisdiction of all offenses against the United States in the district courts. . . Subject

---

[4]      The district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States.
Nothing in this title shall be held to take away or impair the jurisdiction of the courts of the several States under the laws thereof.
*Id*.

matter jurisdiction was vested in the district courts upon the filing of the indictment.");
*United States v. Masat*, 948 F.2d 923, 934 (5th Cir. 1992); *United States v. Richardson*, 2010
WL 4873669 at *1 (S.D. Tex., Nov. 23, 2010) (designated unpublished) ("The Court has
subject matter jurisdiction over this case pursuant to 18 U.S.C. § 3231, giving the federal
district courts subject matter jurisdiction over 'all offenses against the laws of the United
States.'").

Although Taft also relies on Article I, Section 8, clause 17 of the Constitution of the
United States as support for his challenge to the jurisdiction of the district court, that clause
states,

> To exercise exclusive Legislation in all Cases whatsoever, over such District
> (not exceeding ten Miles square) as may, by Cession of particular States, and
> the Acceptance of Congress, become the Seat of the Government of the United
> States, and to exercise like Authority over all Places purchased by the Consent
> of the Legislature of the State in which the Same shall be, for the Erection of
> Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings;--And

*Id.*

Clause 17 refers to the District of Columbia and does not limit the power of the
Congress to enact criminal laws. Clause 18 of that same section, the necessary and proper
clause, grants to Congress the authority to make all laws which shall be necessary and proper
for carrying into execution all of the powers vested by the Constitution in the government
of the United States. Additionally, clause 9 of Article I, § 8, authorizes Congress to establish
the lower federal courts and to regulate the conduct of those courts. *Willy v. Coastal Corp.*,
503 U.S. 131, 136 (1992). The Constitution of the United States grants to Congress the
authority to enact the laws of the United States and to create the federal lower court system

to adjudicate claims that those laws were infringed. Taft's challenges to this Court's jurisdiction are unfounded and are overruled.

**B.     Waiver**

Taft does not address his waiver of the right to file a § 2255 motion. Although Taft claims that counsel was ineffective before Taft entered his guilty plea and signed the plea agreement, his claims of ineffective assistance do not automatically relieve him of his waivers of appeal and § 2255 post-conviction proceedings. *See United States v. White*, 307 F.3d 336, 343-44 (5th Cir. 2002) (an ineffective assistance claim survives a waiver "only when the claimed assistance directly affected the validity of that waiver or the plea itself"). In *White*, the Court decided there was "no need to except ineffective assistance of counsel claims from the general rule allowing defendants to waive their statutory rights so that they can reach a plea agreement if they wish. The Sixth Amendment right to effective assistance of counsel may also be waived, and thus need not be treated any differently." *Id*. at 343 (internal citations omitted).

Taft pleaded guilty pursuant to a plea agreement with the government. The plea agreement advised Taft, "Neither the government nor any law enforcement officer can or does make any promises or representations as to what sentence will be imposed by the Court." D.E. 47 at ¶ 5. The agreement also stated that Taft's sentence would be determined by reference to the sentencing guidelines. *Id*. at ¶ 6.

> Defendant acknowledges and agrees that the Court may impose any sentence up to and including the statutory maximum, and that sentence to be imposed is within the sole discretion of the Court in accordance with the Sentencing Reform Act of 1984,

> 18 U.S.C. § 3553(a)(1) and (2), and § 3661. If the Court should
> impose any sentence up to the maximum established by statute,
> defendant cannot, for that reason alone, withdraw a guilty plea,
> and will remain bound to fulfill all of the obligations under this
> plea agreement.

*Id.* The plea agreement confirmed that any estimate of a sentencing range that Taft obtained

from counsel, the United States, or the Probation Department "is a prediction, not a promise,

and is not binding on the United States, the Probation Office, or the Court." *Id.* at ¶ 8.

On the date scheduled for Taft's final pretrial conference, his counsel announced to

the Court,

> 16 MR. ISLES: We have a change in announcement, your Honor.
> 17 THE COURT: Alright.
> 18 MR. ISLES: My client wishes to enter a plea of
> 19 guilty to a conspiracy count and admit to the conduct in the
> 20 April load in exchange for our plea agreement in which he would
> 21 waive his right to appeal. I've gone over the tentative plea
> 22 agreement with my client, and I believe the government is
> 23 waiting for someone to run over the corrected copy. Mr. Miller
> 24 will speak to that.
> 25 THE COURT: Is that what you –
> 1 MR. MILLER: Your Honor. Yes, your Honor, I excised
> 2 some of the language in there about maximum credit for
> 3 acceptance of responsibility. The terms of the plea agreement
> 4 are in exchange for his plea of guilty to the conspiracy count
> 5 of the indictment. The government will move to dismiss the
> 6 remaining counts. The defendant also has agreed to waive his
> 7 appellate rights.
> 8 THE COURT: Is that what you want to do, Mr. Taft?
> 9 DEFENDANT TAFT: Yes, sir.

D.E. 98, pp. 3-4.

The Court asked Taft if he had received the Second Superseding Indictment, read it

and discussed it with counsel, understood the charges against him, and had enough time to

discuss the case with his attorney. Taft testified that he had. *Id.*, pp. 9-10. The Court asked

Taft whether his counsel was appointed and whether he was satisfied with his services. Taft

responded that counsel was appointed and he was satisfied. *Id.*, p. 10.

   The Court advised Taft of his trial rights and his right to remain silent. Taft waived

his right to remain silent and his trial rights. *Id.*, p. 12. Taft advised the Court that he wished

to plead guilty. *Id.* The Court recited the elements of the conspiracy charge. Taft testified he

understood what the government was required to prove. *Id.*, p. 14.

   The Court advised Taft that his maximum possible punishment was ten years

imprisonment. D.E. 98, p. 15.[5] The Court also discussed the manner in which Taft's sentence

would be calculated. The Court further questioned Taft regarding the plea agreement,

> 10 COURT: Now, has anyone threatened you or forced
> 11 you to plead guilty, . . .?
> 15 THE COURT: Mr. Taft?
> 16 DEFENDANT TAFT: No, sir.
> 17 THE COURT: Has anybody promised you leniency or a
> 18 special sentence or a special favor if you would plead guilty,
> 19 Mr. Taft?
> 20 DEFENDANT TAFT: No, sir. . . .
> 25 THE COURT: Who makes the decision for you to plead
> 1 guilty, Mr. Taft?
> 2 DEFENDANT TAFT: I do. . . .

---

[5]  8 . . . the maximum possible
   9 punishment is a period of ten years in the penitentiary. There
   10 is a maximum $250,000 fine, a mandatory one hundred dollar
   11 special assessment. The Court may impose a period of
   12 supervision of your behavior. That begins when you are
   13 released from custody. The period of supervision must be at
   14 least two years; it can last as long as three years. And if
   15 you violate the terms and conditions of it, you can be returned
   16 to the penitentiary to serve sentences of up to two years.

*Id.*

> 7 THE COURT: Why are you pleading guilty . . .
> 12 THE COURT: Mr. Taft?
> 13 DEFENDANT TAFT: Because I'm guilty.

*Id.*, pp. 17-18.

The Court discussed the waiver of appeal and right to collaterally challenge his

sentence with Taft.

> 2 THE COURT: At page three, paragraph seven in each of
> 3 your -- let me check this -- in each of your plea agreements,
> 4 you are giving up your right to appeal your sentence and your
> 5 conviction. You may appeal your sentence and your conviction,
> 6 however, if I sentence you above the statutory maximum or
> 7 depart upward from the guidelines when the United States has
> 8 not requested me to do so. You're also giving up your right to
> 9 file a 2255 petition.
> 10 Did you know that you were giving up these rights,
> 11 Mr. Taft?
> 12 DEFENDANT TAFT: Yes, sir.

*Id.*, p. 22. Taft further testified he had not been promised a specific sentence.[6] Taft testified

that he read the plea agreement, discussed it with counsel, understood it and signed it. *Id.*,

p.  19-20.

---

[6]     THE COURT: Has anyone promised you what your
2 sentence would be, Mr. Taft?
3 DEFENDANT TAFT: No, sir.

*Id.*, p. 23.

The government recited the facts that it expected to prove at trial including that Taft was stopped with aliens in his truck in February 2013, but he was not charged, that his co-defendants made one successful and one unsuccessful transport of aliens in April 2013, that one of the co-defendants text messaged Taft during the unsuccessful trip, and that Taft was arrested on May 13, 2013, with fifteen aliens in his trailer. Taft was present with co-defendant Charles on April 5, 2013, when aliens were loaded into the tractor-trailer. Chamberlain arrived later and made the trip through the checkpoint with Charles. *Id.*, p. 28. Border Patrol cameras include photographs of Taft's SUV shadowing the tractor-trailer on that date. Taft met the tractor-trailer in Sugarland and transferred the aliens from the tractor-trailer to his SUV. *Id.* The next day, Charles and Chamberlain again met with Taft who paid Chamberlain $500 and paid Charles an unknown sum in cash. *Id.* Taft testified that the factual recitation was correct. *Id.*, p. 31.[7]

---

[7]   21 THE COURT: And did you do the things and say the
      22 things that the government says that you did, Mr. Charles?
      23 DEFENDANT CHARLES: Yes, your Honor.
      24 THE COURT: Ms. Chamberlain?
      25 DEFENDANT CHAMBERLAIN: Yes, sir.
      1 THE COURT: Mr. Taft?
      2 DEFENDANT TAFT: Yes, sir.
      3 THE COURT: So as described to me by the government,
      4 the three of you, in April of 2013, were working together to
      5 move aliens through -- I don't remember which checkpoint --
      6 through the checkpoint, which one?
      7 MR. MILLER: It was the Falfurrias checkpoint on that
      8 day.
      9 THE COURT: Through the Falfurrias checkpoint. Is
      10 that true, Mr. Taft?
      11 DEFENDANT TAFT: Yes, sir.
      16 THE COURT: And were you doing that for money,
      17 Mr. Charles?
      18 DEFENDANT CHARLES: Yes, your Honor.

13

Taft's sworn statements in open court are entitled to a strong presumption of truthfulness. *United States v. Lampaziane*, 251 F.3d 519, 524 (5th Cir. 2001) (citing *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)). Indeed, the Fifth Circuit affords "great weight to the defendant's statements at the plea colloquy." *United States v. Cothran*, 302 F.3d 279, 283-84 (5th Cir. 2002); *see also United States v. Maldonado-Rodriguez*, 64 F.3d 719, 733 (1st Cir. 1995) (giving credence to defendant's representations at plea hearing that he had not been pressured).

Taft's testimony that he understood he was waiving his right both to appeal (except under certain circumstances) and to file any § 2255 motion is all that is required for his waiver to be enforceable. *See Wilkes*, 20 F.3d at 653 ("a defendant can waive his right to appeal as part of a plea agreement if the waiver is informed and voluntary"). The Court finds that Taft's guilty plea was knowing and voluntary. The Court also finds that Taft's plea agreement and his waiver of § 2255 rights contained therein are valid and enforceable. *Id*. His remaining claims, except for his claim that counsel refused to file a notice of appeal, fall within the scope of his waiver and are barred from consideration.

---

19 THE COURT: Ms. Chamberlain?
20 DEFENDANT CHAMBERLAIN: Yes, sir.
21 THE COURT: And Mr. Taft?
22 DEFENDANT TAFT: Yes, sir.

*Id*., pp. 31-32.

14

## C.     Failure to file a Notice of Appeal

Taft's claim that counsel refused to file an appeal was raised for the first time in his February 24, 2015, filing. A motion made under § 2255 is subject to a one-year statute of limitations, which, in most cases, begins to run when the judgment becomes final.[8] 28 U.S.C. § 2255(f). The Fifth Circuit and the Supreme Court have held that a judgment becomes final when the applicable period for seeking direct review of a conviction has expired. *Clay v. United States*, 537 U.S. 522 (2003); *United States v. Gamble*, 208 F.3d 536, 536-37 (5th Cir. 2000) (per curiam).

Taft's judgment became final fourteen days after it was entered on the docket, when the time to file his notice of appeal expired on October 14, 2013. *See* Fed. R. App. P. 4(b)(1). The deadline to file his motion to vacate expired a year later on October 14, 2014. Taft's original § 2255 motion was filed March 20, 2014,[9] within the statute of limitations. The claims raised in his filing mailed on June 11, 2014, are also timely. But the claim that counsel

---

[8]   The statute provides that the limitations period shall run from the latest of:

> (1) the date on which the judgment of conviction becomes final;
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from filing by such governmental action;
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

[9]   Because Taft is incarcerated, the date of mailing controls the timeliness of his motion. Fed. R. App. P. 4(c).

refused to file a notice of appeal that was raised for the first time on February 24, 2015, is untimely unless it relates back to his original claims or unless limitations should be equitably tolled.

Rule 15(c)(2) of the Federal Rules of Civil Procedure may apply in post-conviction proceedings. *See Mayle v. Felix*, 545 U.S. 644, 649-50 (2005). Nevertheless, a later pleading "does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground of relief supported by facts that differ in both time and type from those the original pleading set forth." *Id*. Taft's original claims challenged the indictment, counsel's effectiveness at sentencing, and counsel's effectiveness before his guilty plea. *See* D.E. 89. Taft's timely supplemental claims include a challenge to this Court's jurisdiction, alleged violation of Taft's Fourth Amendment rights, and counsel's effectiveness before Taft's guilty plea. *See* D.E. 102. None of these complaints relate to a failure to file a notice of appeal. As a result, Taft's new claim that counsel refused to file a notice of appeal is time-barred.

Taft does not request equitable tolling on this issue. Moreover, the failure to file a notice of appeal is not information that was hidden from Taft. Indeed the government noted that Taft did not file a notice of appeal in its response filed May 30, 2014, before limitations expired. D.E. 101, p. 5.

Because Taft's claim that counsel refused to file a notice of appeal is barred by limitations, this Court may not consider it.

**D.      Motion for Evidentiary Hearing**

Taft requests an evidentiary hearing. DE. D.E. 112, 123. An evidentiary hearing is only necessary when the Court cannot decide the motion based upon the pleadings and the record. Because Taft's claims are barred by his waiver and by limitations as established by the record, the Court denies Taft's request for an evidentiary hearing.

## V.   CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Taft has not yet filed a notice of appeal, the § 2255 Rules instruct this Court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11, § 2255 Rules.

A COA "may issue. . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).

To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). This standard requires a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further. *United States v. Jones*, 287 F.3d 325, 329 (5th

Cir. 2002) (relying upon *Slack*, 529 U.S. at 483-84).

As to claims that the district court rejects solely on procedural grounds, the movant must show both that "jurists of reasons would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484 (emphasis added).

Based on the above standards, the Court concludes that Taft is not entitled to a COA on any of his claims. That is, reasonable jurists could not debate the Court's resolution of his claims, nor do these issues deserve encouragement to proceed. *See Jones*, 287 F.3d at 329.

## VI.  CONCLUSION

For the foregoing reasons, Taft's motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 (D.E. 89) is DENIED. He is also denied a Certificate of Appealability. Taft's additional motion for summary judgment (D.E. 102) and his remaining motions (D.E. 107, 108, 120, 121, 123, 124 and 125) are DENIED as well. The government's motion for summary judgment (D.E. 101) and to dismiss (D.E. 116) are GRANTED.

It is so ORDERED on the 19th day of April, 2016.

_____
HAYDEN HEAD
SENIOR U.S. DISTRICT JUDGE